J-A09024-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL M. COONEY AND BETH A. COONEY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 948 WDA 2025 |
| SAMUEL J. LAWTHER, JR. | : | |

Appeal from the Judgment Entered October 27, 2025
In the Court of Common Pleas of Venango County Civil Division at No(s):
155-2022

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:                     **FILED: JULY 20, 2026**

Michael M. Cooney ("Michael Cooney") and Beth A. Cooney (collectively, "the Cooneys") appeal from the judgment entered against them and in favor of Samuel J. Lawther, Jr. The Cooneys claim the court erred in denying their request for a prescriptive easement and awarding attorney's fees against them. We affirm.

The trial court summarized the factual background as follows:

> [The Cooneys] purchased the property at 1202 Frenchcreek Road in November 1995. Adjacent to [the Cooneys'] property is lot 11-22-12A, which was purchased by [Lawther's] grandparents in 1963. Located upon lot 12A is a yard, most of a path, and a grass area which are the subject of this litigation.  Next to 12A is [Lawther's] lot 11-22-11A, which was purchased by [Lawther's] parents in approximately 1967. These properties owned by [Lawther's] grandparents and parents were conveyed to [Lawther] in part in 1999 and in whole in 2014. This litigation concerns a "path," . . . being a path from Frenchcreek Road to the water

of French Creek (hereafter "Path") and a near-flat landing at the base of the Path (hereafter "Yard"), which are located primarily on [Lawther's] property and adjacent to [the Cooneys'] property.

Permission to use the Path and Yard had previously been granted to the prior owners of [the Cooneys'] property, the Deinarts.

. . .

[Lawther] and his relatives and friends regularly maintained and/or arranged maintenance of all of the lots [Lawther] owned, including the Path and Yard. [The Cooneys] also maintained the Path and Yard, including, but not limited to, mowing, weeding and other yard work. Additionally, [Lawther] regularly used both the grass area/Yard and the Path to transport rafts and boats from the water to his other properties. In the years 2014, 2017, and 2021, it was believed [the Cooneys] caused damage and dumped trash on the Path/Yard and, later on, established that [the Cooneys] dismantled a firepit in the Yard area by throwing [Lawther's] rocks for the pit into the creek. [Lawther] repaired any damage to the [P]ath resulting from [the Cooneys'] and others' use. [Lawther] ultimately placed a chain across the Path . . . on September 9, 2021 to allow grass seed to grow on the repaired grass.

Trial Court Opinion, filed 7/2/25, at 1-3 (citations to the record omitted).

The Cooneys filed a complaint against Lawther in March 2022 claiming that, among other things, they were entitled to a prescriptive easement over the Path and Yard because they used the Path and Yard areas continuously since purchasing their property and without permission from Lawther.

A two-day bench trial was held on December 9 and 10, 2025. Lawther testified that he "[a]bsolutely" gave permission to the Cooneys to use the Path and Yard. N.T., 12/10/24, at 212. He explained that he met Michael Cooney in 1996, and Michael Cooney asked him if he could use the Path and Yard to

- 2 -

transport his canoe via a truck. *Id.* at 157-58. Lawther testified that he replied, "[S]ure," and gave Michael Cooney permission to use his land. Lawther stated that the following summer, Michael Cooney asked him if he could use the Path to cut his grass, and he again granted permission. *Id.* at 158-59. Lawther testified that the permission he gave to Michael Cooney was consistent with the permission that had been granted by his family to the Cooneys' predecessors, the Deinarts. *Id.* at 159. He further stated that he had given permission to use his property to numerous other people, including family, friends, and neighbors. *Id.* at 39. Lawther testified that over the last 50 years, he and his family granted permission to 47 people to use the property. *Id.*

Lawther testified that he had observed Michael Cooney using the Path and Yard throughout the years, including driving his truck on the property and mowing the Path and Yard at various times. *Id.* at 154, 188-89, 191. Lawther said they would wave to each other when they saw each other and had waved to each other "a hundred times in the 30 years[.]" *Id.* at 29. Lawther testified that Michael Cooney had repeatedly asked him if he could purchase the Path and Yard from him. *Id.* at 165.

Lawther testified that between 1996 and 2021, he never prevented the Cooneys from using his property or revoked permission. *Id.* at 161-62. He stated that he only revoked permission in 2021 due to damage that was done on the property. *Id.* at 166-67.

Robert Masters, a friend of Lawther's, testified that he frequently visited Lawther's property and was present when he overheard Lawther grant verbal permission to Michael Cooney to use the Path and Yard in 1996. *Id.* at 81-82, 86-88, 92-93. Masters also testified that he overheard Michael Cooney ask Lawther on numerous occasions whether Lawther wanted to sell the Path and Yard to him. *Id.* at 86-87, 92.

Michael Cooney testified that he acquired his property in November 1995. N.T., 12/9/24, at 71. He stated that he continuously used and maintained the Path and Yard since he bought his property. Michael Cooney testified that he did not know if he had a legal right to the Path and Yard, but he "used it and took care of it." *Id.* at 107. He said that this included cutting down trees, mowing the area, graveling the ramp, and digging a trench once a year to divert rainwater. *Id.* at 110-114. Later in his testimony, Michael Cooney clarified that when he bought his land, he knew that the Path and Yard were not his, but he did not know who owned them. *Id.* at 194-96.

Michael Cooney testified that he never had permission from Lawther or from anyone else to use the Path and Yard. *Id.* at 123, 201. Michael Cooney stated that Lawther's contention that he gave permission to Cooney to use the Path and Yard was "not true." *Id.* at 201. Michael Cooney testified that he never spoke to Lawther about using the Path and Yard, and Lawther never objected to Cooney using the Path and Yard. *Id.* at 127, 202. Michael Cooney denied that he asked Lawther to purchase the Path and Yard, but rather only asked him about purchasing a piece of his property to put a garage up. *Id.* at

187-88. Michael Cooney testified that he and Lawther never had a verbal altercation and they "never argued about anything." *Id.* at 131.

After the trial, the court issued Findings of Fact and Conclusions of Law. The court found in favor of Lawther and denied the Cooneys' claim for an easement. The court also awarded attorney's fees to Lawther pursuant to 42 Pa.C.S.A. §§ 2503(7) and (9) and ordered that an evidentiary hearing be held to determine the reasonableness of the fees. The Cooneys filed a post-trial motion, which was denied. This appeal followed.

The Cooneys raise the following issues:

1. Did the trial court commit an error of law in finding that the hostile intent of [the Cooneys] was negated by alleged permission, by permission given to predecessors in title, or by "neighborly conduct"?

2. Did the trial court abuse its discretion in its blanket determination of witness credibility, its misapplication of the law, and its award of attorney's fees?

The Cooneys' Br. at 4 (answers omitted).

The Cooneys first argue that the court should have awarded them a prescriptive easement over the Path and Yard. They point out that the parties agree that the elements for a prescriptive easement of use that is open, notorious, continuous, and uninterrupted for a period of 21 years were established. *Id.* at 11. The parties, however, disagree on whether the element of hostility was met. *Id.* The Cooneys argue that when they first started using the Path and Yard in 1996, Lawther's mother, Teresa Lawther, was the true owner of the property and Lawther did not become an owner of the property

until 1999. *Id.* at 12, 17. The Cooneys maintain that because the true owner provided no permission for use of the Path and Yard to the Cooneys, their use of the property was hostile, thus establishing the hostility element for a prescriptive easement. *Id.* at 12-13.

The Cooneys further argue that "[e]ven if the permission was found to be applicable to negate notorious use and create a license as the lower court so suggests, that permission terminated when the ownership of the dominant parcel transferred from Teresa Lawther to herself and Lawther in 1999." *Id.* at 17. In the Cooneys' view, "that transfer in ownership terminated any grant of permission existing at the time thereof." *Id.* The Cooneys assert that "to ensure the alleged permissive use continued as a permissive use . . ., Lawther would have had to renew the grant of permission to use the Path and Yard after the exchange in ownership" and "[n]o evidence was presented regarding any subsequent renewal of permission." *Id.*

The Cooneys further argue that, even if Lawther granted the Cooneys permission, that permission was limited to allowing the Cooneys to drive their truck to the water and their lawnmower to the lower yard. *Id.* at 18. The Cooneys claim that they exceeded any alleged permissive use of the land when they did other acts on the land, including "letting family members and friends access the Path and Yard; mowing and otherwise taking care of the Path and Yard; creating ruts or scalping grass in the Path and Yard; disposing of trash and other debris in the Path and Yard; or damaging signs or fire pits in the Path and Yard." *Id.* In the Cooneys' view, "[e]ach of these acts was factually

- 6 -

taken outside the grant of permission, and serves as a separate act of . . . hostility such that the Cooneys expressed dominion over the parcel [was] greater than the permitted use." *Id.* at 18-19.

A prescriptive easement "is a right to use another's property which is not inconsistent with the owner's rights and which is acquired by a use that is open, notorious, and uninterrupted for a period of 21 years." *McNaughton Properties, LP v. Barr*, 981 A.2d 222, 225 n.2 (Pa.Super. 2009). To establish a prescriptive easement, the user must prove "(1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use [of land] for a period of twenty-one (21) years." *Village of Four Seasons Ass'n, Inc. v. Elk Mountain Ski Resort, Inc.*, 103 A.3d 814, 822 (Pa.Super. 2014) (citation omitted). The burden of proving these elements falls on "the party asserting the easement" by "'clear and positive' proof." *Id.* (citation omitted).

"Before the title of a landowner may be encumbered by an easement, the court must have clear proof that the prescriptive rights have been established by a user with hostile intent and not through indulgence, permission or mutual accommodation." *Stevenson v. Williams*, 145 A.2d 734, 736-37 (Pa.Super. 1958). "Permissive use defeats a claim of a prescriptive easement." *Village of Four Seasons Ass'n, Inc.*, 103 A.3d at 822. The determination of "whether a use is adverse or permissive is a question of fact." *Gehres v. Falls Twp.*, 948 A.2d 249, 251 (Pa.Commw. 2008). "In case of a right of way the right must not only have been enjoyed without interruption for 21 years, but that enjoyment must have been adverse

to the rights of the owner of the land, in order to give title." **Stevenson**, 145 A.2d at 736. "If the use was merely permissive, . . . and not in any sense hostile or adverse, the claim . . . to a prescriptive right must be rejected." **Id.** "[A] permissive use may arise from a 'neighborly accommodation[.]'" **Waltimyer v. Smith**, 556 A.2d 912, 914 (Pa.Super. 1989). "A use based upon permission cannot ripen into a prescriptive right unless the owner of the land is given clear notice that the character of the use has changed from a permissive use to an adverse use, and the adverse use then continues for the full prescriptive period." **Id.**

Here, the court found that Lawther credibly testified that he gave permission to Michael Cooney in 1996 to use the Path and Yard. Trial Ct. Op. at 9, 11. The court recognized that "the permission given by [Lawther] in 1996 was not that of the record owner, Theresa J. Lawther," and that the property was not formally transferred to Lawther until 1999. **Id.** at 9-10. However, the court found that "this 'permission' served as acknowledgment of the start of [the Cooneys'] permitted use of the property and, ultimately, renders [the Cooneys'] use to not be adverse or hostile during the designated period." **Id.** at 10. The court pointed out that there were no arguments between the parties and "[t]he friendly nature of the parties during this relevant time is indicative of an attitude of allowance." **Id.** at 7-8. The court further found that Michael Cooney was not credible and fabricated his testimony. **Id.** at 11-12.

Upon review, we agree with the court that the Cooneys failed to establish a prescriptive easement due to the absence of hostility. There was

no evidence presented that Lawther was given notice that his property was being used by the Cooneys in a hostile or adverse manner during the relevant period. The court found that Lawther was credible when he testified that he gave permission to Michael Cooney to use the Path and Yard. The evidence showed that this permission was consistent with the permission the Lawther family gave to others over the previous 50 years and supports the conclusion that it was a neighborly accommodation. **See Stevenson**, 145 A.2d at 737; **Waltimyer**, 556 A.2d at 914. We are not persuaded by the Cooneys' contention that permission was invalid because Lawther's mother did not give the permission. Lawther's testimony, which the trial court credited, was a sufficient basis for the court to find a lack of hostility during his ownership. Because their use was permissive, the Cooneys' claim for a prescriptive easement must fail.

In their second issue, the Cooneys argue that the court erred in awarding attorney's fees to Lawther. The Cooneys assert that "[w]hile the court maintains discretion in determining the credibility of witnesses, the lower court took it a step further to blanket discredit all of the Cooneys' witness [sic] testimony and evidence and grant full faith and credit to Lawther's witnesses and evidence." The Cooneys' Br. at 22-23. The Cooneys further argue that because, as they argue in their first issue, they established that they have legal right to a prescriptive easement, "their litigation was not arbitrary, as there was a purpose behind it; it was not vexatious, as they had a legal basis

for bringing it; and it was not brought in bad faith, as they had a legitimate legal basis for success." ***Id.*** at 24.

"The trial court has great latitude and discretion with respect to an award of attorneys' fees pursuant to a statute." ***Scalia v. Erie Ins. Exch.***, 878 A.2d 114, 116 (Pa.Super. 2005). We review the court's decision over an award of attorneys' fees for an abuse of discretion. ***Id.*** "If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, we will not disturb the trial court's decision." ***In re Padezanin***, 937 A.2d 475, 484 (Pa.Super. 2007) (citation omitted).

Here, the court awarded attorney's fees under 42 Pa.C.S.A. §§ 2503(7) and (9), which provides:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> . . .
>
> (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.
>
> . . .
>
> (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

42 Pa.C.S.A. §§ 2503(7), (9).

In support of its award of attorney's fee, the court explained:

> In the case of Plaintiff Michael M. Cooney, the [c]ourt noted in its Findings numerous observations of inconsistencies and contradictions that led this [c]ourt to the conclusion that

Plaintiff Michael M. Cooney was deliberately testifying falsely to support his own case. Examples included in this [c]ourt's Conclusions of Law were [Michael Cooney's] permission to use [Lawther's] property, vandalization of [Lawther's] property, and the motivation for filing this action. However, these were not the only instances of inconsistency in the record. Upon consideration of the extent of Plaintiff Michael M. Cooney's inconsistent testimony, his demeanor, and apparent bias, this [c]ourt determined that Michael M. Cooney's testimony was not credible and, in fact, fabricated to support [the Cooneys'] claims.

The [c]ourt similarly evaluated the supporting testimony of [the Cooneys'] other witnesses, which consisted of his wife, Beth A. Cooney, his son, Matthew Cooney, and his brother-in-law, Kendall Stoops. This [c]ourt found that these witnesses were not credible in light of an apparent motive to assist in fabricating [the Cooneys'] claims. This determination was made in consideration of the relationship between said witnesses, their demeanor and manner of testifying, their bias, and the content of said testimony supporting what this [c]ourt believes was fabricated by Michael M. Cooney. The testimony presented by [the Cooneys'] witnesses was considered only to the extent that it was corroborated by other evidence the [c]ourt determined to be credible.

Trial Ct. Op. at 11-12 (citation omitted).

The court found that Michael Cooney's dishonesty qualified as bad faith warranting an award of attorney's fees. **See** Findings of Fact and Conclusions of Law, filed 4/8/25, at 12. The record supports the trial court's decision, and we will not disturb its credibility determinations. Accordingly, we conclude that the court did not abuse its discretion in awarding attorney's fees to Lawther.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/20/2026